CALEB HUNT vs. GOOKIN and FAY.

(In Chancery.)

A defendant may answer in part, and by his answer state grounds why he should not be compelled to make further answers.

If the survivor has a claim against the estate of his deceased partner, growing out of his partnership, he may present it to commissioners, and if the aid of the court is required to enable him to make out his claim, it will be granted; but the claim, when ascertained, must be returned, with the list of claims, either by the commissioners or by the court, to which an appeal from those commissioners is taken.

Chancery will not compel an account of partnership dealing, when a suit at law is pending, in which the same should be adjusted and settled, and the aid of the court is not necessary to ascertain the particulars of the account.

The bill in this case set forth, that the orator had labored for the intestate, Richard Gookin, from 1804 to 1807, in tending a carding machine—that in April, 1807, he entered into partnership with the said Richard in carrying on a carding machine

at Bath in New Hampshire, and for other business, which con-
tinued to the death of Mr. Gookin in 1826—and that a large
balance was due to the orator; that after Mr. Gookin's death
a commissioner was appointed on the estate in New Hampshire,
to receive and examine the claims against his estate—that he
attended before the commissioners for the purpose of present-
ing his claims, but at the earnest solicitation of Mrs. Gookin,
who was administratrix, he was induced to forbear presenting
his claims, and on the 4th of April, A. D. 1828, he entered
into a contract with Mrs. Gookin, which was set forth in the
bill—that Mrs. Gookin has neglected and refused to perform
the contract or convey the lands therein mentioned, and that
there was fraud by the administratrix in obtaining the contract;
that Richard Gookin was possessed of a large estate in Ver-
mont, and in October, 1830, administration on his estate was
granted in Vermont to the defendant, William Fay—that com-
missioners were appointed to receive, examine and adjust the
claims of the creditors; that the orator attended before the
commissioners and presented his claims against the estate, and
the administrator objected to the allowance for the reason that
they were barred by the contract and memorandum aforesaid,
and the commissioners disallowed his claim; that an appeal
was taken from the decision of the commissioners, which was
then pending.   The prayer of the bill was, that the contract
might be set aside, that an account might be taken of the part-
nership dealings, and for that purpose that the defendant might
set forth in particular the sums received from the partnership.

The answer of Mrs. Gookin, among other things, sets forth,
that she on the decease of the said Richard was duly appoint-
ed his administratrix in said State of New Hampshire and took
upon herself the burden of such administration, and thereupon
represented said estate to be insolvent; whereupon Joseph
Bell, Esq. of said Haverhill, on the second Tuesday of Feb-
ruary, A. D. 1827, was duly appointed by the probate court
for the district of Grafton, within which district said Haverhill
is situated, a commissioner to receive, examine and adjust all
claims against said estate, and six months from that day were
allowed for the creditors of said estate to present their claims
for allowance to said Bell, according to the provisions of an
act of the legislature of New Hampshire, passed on the second
day of July, A. D. 1822, entitled, "An act regulating the set-
tlement and distribution of insolvent estates," and on due ap-

plication for that purpose, said commission was renewed on the ninth of October, A. D. 1827, and the further time of six months from that day was allowed for the presentation of claims against said estate. And further, that the said Bell did, on the eighth day of April, A. D. 1828, return the said commission, with a list of the claims by him allowed, to said probate court, which was duly accepted by said court. And further, that the complainant neglected to present any claims against said Richard's estate to said commissioner, and nothing was allowed him by said report; by reason whereof and of said statute of New Hampshire, the said complainant was and is forever barred from all and every remedy in said state for the recovery of any claims or demands he may have had against said Richard at the time of his decease, it being provided by said act that all claims which be and are not presented to said commissioners shall be forever barred.

And further, that the said complainant, at the time of the decease of the said Richard, was an inhabitant of said State of New Hampshire, and had been from the time he first went into the employ of said Richard, resident in Bath in said district of Grafton, and where he continued to reside until long after the time allowed by said probate court for presenting claims against the said Richard's estate as aforesaid had expired, and until the said Bell had returned his commission as aforesaid to said court, and until the month of October, A. D. 1830, when the said complainant moved from said state to said Montpelier.

And this defendant insists, that by reason of the premises and of said act of New Hampshire the said complainant is barred of all remedy, and ought not to have sustained in this court, or in any other court in this state, any suit for the recovery of any claim which he had against the said Richard at the time of his decease; and she prays this honorable court that said matters and things may be allowed in bar of any relief or discovery from this defendant, touching any and all dealings and accounts between the said Richard and complainant, in whatever right or manner they may have accrued, in as full and ample a manner as if they had been pleaded in bar.

And this defendant, further answering, saith, that on the decease of the said Richard there were found to be existing claims between the said Richard and the complainant, which he then and still alleges to have been unsettled, and of which this defendant had no correct knowledge or information: and

the said complainant and this defendant, being mutually desir-
ous of settling said claims, did after the appointment of this
defendant as administratrix, mutually enter into and duly exe-
cute a writing obligatory, as follows:

"Memorandum of our agreement, made and executed this
4th day of April, A. D. 1828, by and between Rebecca D.
Gookin, administratrix on the estate of Richard Gookin, late
of Haverhill, deceased, on the one part, and Caleb Hunt of
Bath on the other part, witnesseth, that the said Rebecca D.
Gookin agrees to release and quit-claim, and cause it to be
done as soon as the heirs can by law make said deed to him
the said Hunt, all the title of which the said Gookin died seized
to the house lot in Bath, where the said Hunt now lives, and
also the brick ——, so called, in Bath, and also such lots of
land and buildings in said Bath as Ezekiel Ladd and William
F. Hutchins shall appraise to be of the value of one thousand
dollars; and in case they do not agree, they are to choose a
third man: and the said Rebecca D. Gookin further agrees to
release and discharge the said Hunt from all claims in favor of
said Richard Gookin as in the firm of Gookin and Hunt at the
time of said Gookin's death, and also to all personal property
belonging to said firm, except such as is appraised as belonging
to said Gookin's estate, which is to be held by each party as
appraised, and also to release said Hunt from all claims for the
rents of all the houses in said Bath at this date belonging to
said Gookin or his heirs, except the house where George With-
erell now lives, the rent of which, since said Witherell occu-
pied it, is to belong to said Gookin, and also the rent of the
Sargeant farm, so called for 1826–7, is to belong to said Goo-
kin.

And said Rebecca D. Gookin further agrees to assign to said
Hunt all the claims on the grist-mill book at said Bath, as the
same now stands, except the claims against George Witherell
and company, also Stephen Underwood, Abram Thomas, Jon-
athan Pool, Rebecca D. Gookin and George Witherell, and so
much of Caleb Hunt's second book claims as amounts to three
dollars and fifty cents, claim page 31st, second book, against
Daniel Bartlett. And the said Caleb Hunt on his part, in
consideration of the premises, agrees and covenants with the
said Rebecca D. Gookin to release and convey to her, or any
one whom she may appoint, her heirs and assigns forever, all
his title to the land where the grist-mill stands now in said
Bath; also the said Hunt to assign and release to said Rebec-
ca D. Gookin all his claim to two thousand dollars mentioned
in the contract between Gookin and Hunt and Witherell, dated
in October, A. D. 1825: and the said Hunt further agrees as
aforesaid to indemnify and save harmless the said Rebecca D.
Gookin, administratrix as aforesaid on the estate of said Rich-

WASHINGTON,
March,
1834.

Hunt
vs.
Gookin & Fay.

ard Gookin, and the heirs thereof, from all claims and demands existing, or which have existed and are unpaid, against said firm of Gookin and Hunt, and that he will give to the said Rebecca his bond of indemnity in the sum of ten thousand dollars to perform the same on demand. And the said Hunt further agrees as aforesaid to settle and discharge the claims which Chandler S. W. Brown has against the estate of the said Richard Gookin, and also to discharge any claim which the firm of Gookin and Hunt may have on Gookin, Hunt and Witherell, for any materials furnished by said Witherell and Hunt for the factory building, and also to pay Roswell Shurtliff eighteen dollars and seventy-five cents towards the claims exhibited by said Shurtliff against said Gookin's estate. The parties aforesaid mutually covenant and agree each with the other, that upon the performance of the several stipulations aforesaid, this present agreement shall be a mutual release and discharge of all demands on the part of the estate of Richard Gookin against Caleb Hunt, and also all demands in favor of said Caleb Hunt against the estate of said Richard Gookin, for that they will each to the other execute said release and discharge on demand. In witness whereof, the parties as aforesaid, on the day and year aforesaid, set their hands and seals.

REBECCA D. GOOKIN, { L. S. }
CALEB HUNT,       { L. S. }

Signed in presence of
   RICHARD GOOKIN, Jr.
   JOHN F. GOOKIN,
   MARY F. GOOKIN."

And this defendant further doth aver, that the aforesaid writing obligatory was intended by the parties thereto to be in settlement and discharge of all claims and demands in favor of said complainant against the estate of the said Richard and this defendant as administratrix thereon, whether accruing in his individual capacity, or as supposed partner with the said Richard, or with the said Richard and Witherell, and of all claims and demands due from the said complainant to the estate of the said Richard.

And this defendant, further answering, saith, that if this honorable court should be of opinion that all relief sought by said bill touching said dealings and accounts between said Richard and complainant in said bill mentioned is not barred by the neglect of the said complainant to present his claims before said commissioner Bell, or by said contract of April 4th, 1828, she doth then insist, that by reason of the great lapse of time all of said complainant's claims against the said Richard for

services rendered by him prior and up to the 18th day of March, A. D. 1827, are to be presumed paid and satisfied; and she further saith, that no cause of action, either at law or in equity, for or on account of said supposed services, accrued to the said complainant at any time within the six years next before the commencement of his said suit, or serving this defendant with process to appear and answer thereto, and that all remedy therefor is barred by a certain statute law of this state, entitled, " an act for the limitation of suits on penal statutes, criminal prosecutions and actions at law," and on the benefit of which said act this defendant doth insist.

And this defendant doth *then* further insist, that all the dealings and transactions between the said Richard and complainant, touching this said supposed partnership at said Concord, (now Lisbon) from the length of time which has elapsed since said supposed partnership and business at said Concord was dissolved and discontinued, is to be presumed settled and adjusted: and she further saith, that no cause of action, at law or in equity, in relation to said partnership and business, accrued to the complainant at any time within six years next before the filing this bill: and she doth also insist, that all suits and actions, at law and in equity, relative thereto, are barred by the statute entitled as last aforesaid, on the benefit of which she relies.

And as to so much of said bill as seeks for a discovery and account of any and all dealings and transactions between the said Richard and complainant in said bill set forth, and of the amount and nature of property now and at the decease of said Richard belonging to said supposed partnership in said bill mentioned, and the debts due to. and therefrom, this defendant insists that by reason of the circumstances above stated, and the neglect of the complainant to present his claims before said commissioner Bell, and of said contract of April 4, 1828, she is not bound to make any further answer or disclosure in relation thereto.

The orator excepted to the answer in several particulars, for not setting forth the account as prayed for in the bill. The second exception was as follows:

" For that the said Rebecca hath not answered to the best of her knowledge, information and belief, whether the orator, on the 4th of April, 1828, attended before Joseph Bell, commissioner, for the purpose of exhibiting and presenting his claims and demands against the estate of the said Richard for

WASHINGTON,
*March,*
1834.

Hunt
*vs.*
Gookin & Fay.

WASHINGTON,
March,
1884.

Hunt
vs.
Gookin & Fay.

adjustment and allowance, and whether at said time and place the orator was solicited and urged by the said Rebecca D. to omit to present his said demands and claims aforesaid against said estate, and whether to induce the orator to consent thereto, the said Rebecca D. urged and contended that for the orator to present his said claims and demands would greatly perplex and protract the settlement of said estate, and that the claims of the orator might and could much better be settled by compromise than by such presentation and exhibition; and whether the said Rebecca D. as a further inducement for the orator not to present such claims, executed the contract and agreement as set forth in the orator's bill.

*Upham and Keith for orator.*—The first question is, have the defendants, after having submitted to answer, a right to stop short of answering the whole bill?   And secondly, if they have this right, are the facts and circumstances upon which they have rested as an objection to a further discovery, if true, a clear, conclusive and irresistable bar to the plaintiff's demand?

And 1. As a general rule, a defendant, when called upon by a bill to make a discovery of the several charges it contains, must do so, unless he is protected, either by a demurrer, a plea, or a disclaimer.—1 Ves. Im. 292—Cooper's Eq. Pl. 312—2 Swift's Dig. 248—2 Brown's Ch. Cas. 252—15 Ves. 374—16 do. 381—11 Ves. 41, 283, 303.   The rule for which we have been contending has been adopted in the state of New York.—1 John Ch. R. 65—4do. 205—3 Brown, 238.

But it is said the exchequer practice favors the position taken by the defendants and ought to be adopted by this court.   But in the first place, our statute declares that the proceedings of our courts of chancery shall be according to the rules and precedents established in the courts of chancery in the kingdom of Great Britain.—Statute, 123.

In the second place, the standing rules of practice in this court forbid the adoption of the exchequer practice.   By our practice, all exceptions in the first instance are submitted to a master, whose duty it is to report upon them.   By the exchequer practice they go in the first instance to the court.   The master has nothing to do with them.

2. Do the facts and circumstances upon which the defendants have rested, if true, furnish a clear, conclusive and irresistable bar to the plaintiff's claim?

Washington,
March,
1834.

Hunt
vs.
Gookin & Fay.

The seventh section of the New Hampshire act regulating the settlement and distribution of insolvent estates, like ours, declares, that all demands against such estate, which might have been exhibited to and allowed by the commissioners, but which were not exhibited and allowed, shall be forever barred.

The plaintiff's claims are not barred, because they have been exhibited to the commissioners on the estate of the said Richard. The plaintiff, at the time he exhibited his claims to the commissioners, was a citizen of this state, and was entitled to the aid of our laws for the protection of his property and the recovery of his debts. The administration granted to the defendant, Fay, is to be considered not only as a means of collecting the effects of the estate within this jurisdiction, but of answering, according to the rules of the same jurisdiction, the demands of creditors and all legal heirs upon those effects. *Selectmen of Boston* vs. *Boylston*, 4 Mass. Rep. 318, 324. *Richards, administrator*, vs. *Dutch et al*, 8 Mass. Rep. 506, 515. *Dawes* vs. *Boylston*, 9 Mass. Rep. 337, 355. *Dawes* vs. *Head et al*, 3 Pick. Rep. 128, 145.

But it is said the plaintiff's claim is barred because he did not exhibit it before the commissioners in New Hampshire, where he had his domicil at the time the commission of insolvency issued. It is true he could not prosecute this claim in New Hampshire, if administration had not been taken here; and it is also true, that a creditor residing in this state, who did not exhibit his claim there, could not prosecute it there. But a creditor here, although barred in New Hampshire, could exhibit his claim to commissioners on the same estate appointed here, and the New Hampshire statute would be no bar.

Again—the *lex loci contractus* governs as to the nature, validity and construction of the contract, and the *lex fori* as to the remedy. *Vt. State Bank* vs. *Potter* 5 Day's Rep. 316. *Andrews* vs. ——, 9 Cowen's Rep. 508, and cases cited in the note.

Foreign statutes of limitations belong to the *lex fori*, and are in no case available here; but our own statutes of this kind are applicable to all actions pending in our courts.—*Decouche* vs. *Lavatier*, 3 John. Ch. Rep. 263. *Pearsol* vs. *Dwight*, 2 Mass. Rep. 84. *Bryne* vs. *Crowninshield*, 17 Mass. Rep. 55. *Medbury* vs. *Hopkins*, 3 Conn. Rep. 472. *Harper* vs. *Houghton*, 1 Harris and Johnson's Rep. 453—Id. 622—1 Gallis 376. *Le Roy et al* vs. *Crowninshield*, 2 Mason's R. 151.

WASHINGTON,
  *March*,
   1834.

  Hunt
   *vs.*
Gookin & Fay.

So an insolvent discharge of the person relates merely to the remedy.—*White* vs. *Canfield* 7 John. Rep. 117.   *Tupper* vs. *Poor*, 15 Mass. 419.   *Watson* vs. *Bourne*, 10 Mass. 337. *James* vs. *Allen*, 1 Dallas, 88.   *Second* vs. *Whall*, 11 John. 194.   *Peck* vs. ——, 14 John. 346.   *Whitmore* vs. *Adams*, 2 Cowen's Rep. 626.   *Woodbridge* vs. *Wright*, 3 Conn. R. 523—2 Mason's Rep. 151.

The statute of New Hampshire, upon which the defendants rely, being merely a statute of limitations, is not available here, and furnishes no bar to the plaintiff's claim.   Again, we say the plaintiff ought not to be barred, because he was induced not to present his claim to the commissioners by the fraud of Mrs. Gookin.

2. Is the plaintiff barred by the sealed contract upon which the defendants rely? We think not.—7 Cranch, 299   We say, first, Mrs. Gookin as administratrix had no authority to enter into the contract; and secondly, if she had, no counterpart was executed.—3 Comyn's Dig. F. 271—Yel. 18.

3. It was not in her power to perform it at the time she entered into it.

4. She admits in her answer, that the very property which she agreed to convey to plaintiff has been distributed among the heirs to the estate, and has been by them conveyed to other persons; so that it is not now in her power to perform it. 3 Comyn's Dig. M. 122—Coke Lit. 206.   *Jones* vs. *Burkley*, 2 Doug. 684.

5. Mrs. Gookin has refused a request to perform the contract on her part, although plaintiff offered to perform on his part.—3 Comyn's Dig. 116, 117.

6. The plaintiff having a precedent debt against the estate of Richard Gookin, the agreement is no bar to his claims, until the stipulations are performed and mutual releases executed. 3 John. Cas. 71—2 John. Rep. 455—5 John. Rep. 68—8 John. Rep. 202, 389—11 John. Rep. 409, 15 Ib. 224, 241, 247—17 John. 340.

7. The very phraseology of the agreement shows that it was to be no discharge of the plaintiff's claim, until its stipulations were performed, for their mutual releases were to be executed.

8. The plaintiff charges that the agreement was procured by the fraud of Mrs. Gookin, and she has not fully denied it in her answer.

9. It is said by the defendants that we have a prompt and adequate remedy at law, and therefore this bill ought to be dismissed.

This objection, we think, comes too late; the defendants should have demurred to the bill, if they wished to raise this question. In *Underhill* vs. *Van Cortland*, (2 John. Ch. Rep. 339) Chancellor Kent held it too late, after answer, to object to the jurisdiction of the court on the ground that the plaintiff has an adequate remedy at law. And it is well settled that chancery is *auxiliary* to courts of law in compelling a discovery of facts to aid a party in defending and prosecuting his rights at law. *McInstul* vs. *Marcius*, 16 John. Rep. 592.

Again—when chancery gains jurisdiction of a cause for one purpose, it may retain the bill generally, and will, when the remedy at law is difficult or doubtful.—*Rothbone* vs. *Warren*, 10 John. 487. *American Insurance Company* vs. *Fisk*, 1 Paige Ch. Rep. 90.

So chancery, once having had jurisdiction, will retain it, though the original power of jurisdiction, to wit, the inability to recover at law, no longer exist.—*King* vs. *Baldwin*, 17 John. 384.

In all matters of account chancery has concurrent jurisdiction with the courts of common law.—*Potter* vs. *Kimberly*, 9 John. 470. *Southgate* vs. *Montgomery*, 1 Paige Ch. R. 41.

4. It is said by the defendants that the plaintiff should seek his remedy against Mrs. Gookin on her covenants contained in her sealed contract. This probably he might do if he chose, if the covenants are independent. But considering that remedy altogether insufficient to do him justice, he chose to pursue his original course of action against the estate of Richard Gookin. And this we maintain he had a right to do.

5. It is said the death of Richard Gookin gave the commissioners on his estate exclusive jurisdiction of the plaintiff's claim, and this court have no right to order an account taken of the partnership concerns. This doctrine, we think, cannot be sustained. The account can be taken under the order of this court in aid of the suit at law, and when the sum due the plaintiff is ascertained, it can be certified to the probate court if necessary.—16 John. Rep. 592.

6. The case made by the bill shows, that no part of the plaintiff's claim is barred by the statute of limitations.

WASHINGTON,
March,
1834.

Hunt
vs.
Gookin & Fay.

WASHINGTON,
March,
1834.

Hunt
vs.
Gookin & Fay.

*Smith and Peck, contra.*—The question raised by these exceptions is, whether Mrs. Gookin is bound, under the circumstances of this case, to render an account in her answer of the dealings and partnership transactions of Gookin and Hunt. This rests on the point whether a defendant may, in his answer to part of a bill, object to a further answer.

That a defendant may take this objection in his answer has been a long established rule in the equity side of the English court of exchequer. (*Randall* vs. *Head*, Hard. 188—*Sweet* vs. *Young*, Amb. 353—*Jacobs* vs. *Goodman*, 3 Bro. 488—*Richardson* vs. *Hulbert*, 1 Anst. 65.) This is admitted to be the exchequer practice both by Lord Eldon and Chancellor Kent. In the court of chancery the rule is not so well settled, though the weight of authorities would seem to be in favor of the rule.—*Newman* vs. *Godfrey*, Bro. 322—*Cookson* vs. *Ellison*, 2 Bro. 252, establishing a contrary doctrine was wrong. *Gunn* vs. *Prior*, cited in *Jerrard* vs. *Saunders*, 2 Vesey Jn. 453. 3 Ves. 446—4 do. 107—2 B. & B. 164.

In this country the exchequer practice has been adopted as far as the attention of our courts has been called to the subject. 4 John. Ch. Rep. 205—4 Cowen, 617.

This brings us to the second point in the case—are the matters set up in the answer a bar to the relief sought? It is insisted,

1. That the partnership having been carried on in New Hampshire, where the partners resided, and where the plaintiff continued to reside till long after his claims were barred by the laws of that state, in consequence of his neglect to present them before the commissioner, he has no remedy here save what is founded on the contract made with Mrs. Gookin. It is perfectly clear, that in that state he could sustain no action based on the original consideration; for the seventh section of the act referred to in the answer provides, that "all claims against such (insolvent) estate, which by virtue of this act might have been exhibited to and allowed by them (the commissioners,) shall be *forever barred*," provided they are not exhibited. How then is this case to be exempted from the operation of the rule, that what is a discharge of a contract in the country where it was made to be performed, is a discharge every where? This principle is too firmly settled to need the aid of authority. But there are some cases in which this principle is laid down and enforced, that bear too strong a resem-

blance to the case under consideration to be omitted.—*Vermont*
*State Bank* vs. *Potter*, 5 Day, 316—2 Wash. Rep. 282—3
Mass. 77—1 Gallis, 371—1 B. & P. 138.

It was in accordance with this principle, that this court, at
its last term in Orange county, in *Knight* vs. *Kimball*, held
that a contract which was discharged by the laws of New
Hampshire could not be made the foundation of a suit in the
courts of this state. But in order to escape from the *lex loci
contractus*, the plaintiff's counsel are driven to the necessity of
treating the New Hampshire statute as a limitation act, and
they will argue that it only bars the *remedy*. But the analogy
between this act and the general statute of limitations is very
distant, if any exist. Acts of limitation rather establish that
certain circumstances shall amount to evidence that a contract
has been performed, than dispense with its performance. (Per
Marshall, Ch. J. 4 Wheat. 409.) In the case at bar, the con-
tract is discharged by the express words of the statute; and if
it is likened to a limitation act, its effect is not obviated; for
the *right* as well as the *remedy* is extinguished. (2 Mason,
151, 167—13 Mass. Reports, 201—Id. 16, 429—3 N. H.
Rep. 491) This is much like a case of discharge under an
insolvent law, which is a bar to all contracts existing at the time
of the discharge, if the debt was contracted and the parties
domiciled in the state when the discharge was obtained. (5
Mass. Rep. 509—Id. 6, 137—13 Id. 1—12 John. Rep. 142—
2 Kent's Com. 324—9 Cowen, 344—2 Mason, 151—12
Wheat. 213.) If the plaintiff still had his domicil in New
Hampshire, it would hardly be urged that he could come here
and have his claims allowed by commissioners, or call upon this
court to decree an account. Is the case altered by a change
of residence? It is impossible to see how it can be on princi-
ple. His claims were extinguished when he left New Hamp-
shire, and a change of residence did not remove the bar. It
is to be observed, too, that the administration here is *ancillary*,
and was taken out for the purpose of collecting the debts due
the estate, which are to be remitted to New Hampshire for dis-
tribution. It has long been a *vexed* question, whether in such
case the funds are to be first appropriated for the payment of
home creditors and the balance remitted to the foreign admin-
istrator, or the whole remitted in the first instance. But waiv-
ing this question, and assuming the ground that the assets are

WASHINGTON,
   *March,*
    1834.

   Hunt
    *vs.*
Gookin & Fay.
to be applied in payment of the debts of our citizens, the plaintiff gains nothing by the admission, as for this purpose he is not a citizen of this state. (2 Mass. Rep. 89—6 Id. 380—9 Id. 464—11 Id. 269.) His situation is precisely the same as though he was still resident in New Hampshire, inasmuch as his claims were barred when he left that state, and he ought not to be allowed to disturb the settlement here. (3 Pick. 128, 142-3.

3. The contract made with Mrs. Gookin in April, 1828, is of itself a bar to all accounts. It being a contract under seal, and received as a settlement and satisfaction of all pre-existing claims, all right of action founded on the original cause of action is gone, and the claims are merged in the higher security. (Doug. 654—10 Mass. Rep. 239—2 Tem. Rep. 100—4 Cranch, 239—3 John. Cas. 180—2 John. Rep. 213.) The covenants in the contract are independent, and it is evident from its stipulations that each party relied on the other's covenant to compel a performance. (5 Cowen, 519, 511.) In such case this court has no jurisdiction, (2 Litt. 85—A. Ch. Dig. 293, pl. 24,) unless the contract was obtained through fraud, which is denied by the answer; but the parties ought to be left to their remedy at law. The plaintiff does not allege in his bill that injustice was done him in the compromise, or that he was not to have by the terms of the settlement his proportion of the partnership funds.

4. The plaintiff has an adequate remedy at law. If the contract was fraudulently obtained, it may be avoided at law, and would be no bar to a settlement of the claim by commissioners. As it regards the partnership dealings, it is submitted, that by our statute, the commissioners have the exclusive jurisdiction of them. The aid of this court is not asked, nor is it necessary, to compel a discovery in aid of the hearing before the commissioners. The commissioners have full and ample power to examine all the parties on oath touching the claims.

5. The defendants cannot be decreed to render an account of the dealings between the plaintiff and their intestate prior to March 18, 1807, nor of the partnership carried on at Concord, as the lapse of time is a bar, and they are to be presumed to have been adjusted. Neither has any connection with the partnership at Bath. The former partnership was entirely independent of the latter, and was carried on on different terms.

Washington,
March,
1834.

Hunt
vs.
Gookin & Fay.

The opinion of the court was delivered by

Williams, *Chancellor.*—This cause comes before us on exceptions to the answer of the defendant. The master ruled that the defendant should make further answer. Exceptions were taken to the decision of the master, and a hearing has now been had on these exceptions. The question is, whether the defendant shall render an account in his answer of the dealings and partnership transactions between Gookin and Hunt; and this presents the point, whether a defendant may, in his answer to a bill, set forth certain facts as a bar to a further answer, and decline answering for that cause. The practice in the court of chancery in England has been somewhat fluctuating on this point. The old rule, as it is called, undoubtedly was, that if the defendant answer at all, he must answer fully. Without going into an examination of the conflicting opinions which have been held on this point, it may be sufficient to observe, that although it was holden by Lord Loughborough that an answer was sufficient which stated facts and denied the grounds upon which a further answer was prayed, yet the weight of authority in the court of chancery in England is now certainly in favor of the rule. In *Mazarredo* vs. *Maitland*, 3 Mad. 70, the Vice Chancellor held, that a defendant cannot by answering object to answer, though by plea he may; and he says that Lord Eldon, in *Somerville* vs. *Mackay*, 16 Ves. 382, held the same, and observed that it was so useful a rule, he should always adhere to it; and in a case in 4 Maddoc, 252, the Vice Chancellor said, in a bill for an account of partnership, when the defendant by answer denied the partnership, and refused to set forth any account, " the point is settled, if a defendant answers, he must answer fully—he should have pleaded." This rule has, however, always been subject to certain exceptions. Chancellor Kent, who with great ability examined all the English decisions on this subject, admits the general rule, but considers it subject to modifications and exceptions, and in the case then before him, came to the conclusion, that if a defendant submits to detail part of a conversation, he shall give the whole; or if he gave a partial account of assets, he should give a full one; but that he might by his answer rely on a lapse of time as an objection to the plaintiff's right of action, and refuse to make any further answer. *Phillips* vs. *Provost*, 4 John. Ch. Cas. 205. Chief Justice Swift says, that a defendant is not precluded from relating facts to

WASHINGTON, show why he should not be compelled to make a further dis-
March, covery ; that he does not waive the advantage by not demur-
1834. ring or pleading, but may reserve it to the last, and is decidedly

Hunt in favor of the new rule, or the exchequer rule, as it is some-
vs. times called.    2 Swift's Dig. 202.    And Ch. J. Savage in the
Gookin & Fay. court of errors, in New York, said the defendant ought in all
cases to be allowed by answer to refuse to answer.    *Murray*
vs. *Carter*, 4 Cowen, 617.    The practice in the court of ex-
chequer has been always conformable to this.    *Jacobs* vs.
*Goodman*, 3 Brown, 488 in note.    And it was so held by .C.
B. Eyre, when sitting as one of the commissioners of the great
seal, in *Selby* vs. *Selby*, 4 B. C. C. 12.    From an examina-
tion of all the authorities, and being at liberty to adopt our rules
of practice from the practice of either of the courts of chan-
cery in Great Britain, we are disposed to decide, that although
the defendant may not by answer be able to avail himself of
every ground of defence which he could avail himself of by
demurrer or a pure plea in bar, yet he may answer in part and
refuse to answer further, by showing a sufficient ground why he
should not be compelled to make further answer; or in other words,
we adopt the practice in the court of exchequer, in this partic-
ular, as the most consonant to justice.    And though it is true,
that exceptions in the first instance here are referred to a mas-
ter, and do not go directly to the court, as they do in the court
of exchequer, yet that does not afford a sufficient reason for
not adopting that practice.    It remains then to be seen, wheth-
er this answer does disclose such reasons that we ought not to
require a further answer.

It appears that the orator has presented his claims to the
commissioners on the estate of Richard Gookin in this state,
and that a decision has been had adverse to the claim, on the
ground, either that the statute of New Hampshire, or his agree-
ment with Mrs. Gookin, or both, is a bar to his claim, and that
an appeal has been taken from the judgment of the commis-
sioners, which is now pending.    If it should appear that there
are any equitable considerations arising from the proof for set-
ting aside the contract in toto, it may be done when a decree
is made in that case.    If there is not, both the effect of the
statute of New Hampshire and of the agreement between the
orator and Mrs. Gookin will have to be decided in that case,
and any opinion which we might make on their legal effect
would be wholly gratuitous.    We shall not therefore make any

decision upon the questions, whether the statute of New Hamp-
shire, or whether the agreement with Mrs. Gookins bars all
claims of the orator against the estate of Mr. Gookin. Our
views at present are not all alike as to the legal operation of
the statute or the covenant. Though if it were necessary, we
might probably make a decision. In relation to the contract or
covenant, we can only say, that if it was understandingly made,
without fraud, it was intended to be a settlement and adjust-
ment of the claims between the orator and the estate of Mr.
Gookin. It was capable of being specifically performed, and
if performed on one side and not performed on the other, the
party failing could be compelled to make a compensation in
damages. The bill has heretofore been retained, to see if there
are any reasons why this contract should be set aside, or the
party enjoined from taking advantage of it.

There is, however, no reason why the defendants should set
forth a statement of the dealings or accounts between the ora-
tor and Mr. Gookin in answer to this bill, or that they should
make any further answer in the particulars excepted to. The
orator can make out and establish his claim, if he has any, in
the suit at law which is now pending on appeal from the decis-
ion of the commissioners. He has not asked for the aid of
this court to enable him to make his claim, nor does he ask for
a discovery from the defendant for that purpose. There is no-
thing in the way, unless it be the statute of New Hampshire
and the agreement which he made with Mrs. Gookin, and the
effect of these should be decided in that suit. If the statute of
New Hampshire, or the covenants, be a bar, the defendants
can avail themselves of it in that suit. If they are not, or if
the the contract was fraudulently obtained, the orator may sub-
stantiate his claim in that suit. It is said, however, that this
objection is too late—that the defendant should have insisted
upon this by way of demurrer. We think, however, that the
defendants may here avail themselves of this advantage by way
of exception to further answer. The bill charges fraud in ob-
taining the discharge, and that in consequence of this fraud he
was prevented from presenting his claim to commissioners.
This part of the bill is still open for discussion, and for this
reason the defendants would not have been safe in demurring
to the whole bill. No reason is set forth in the bill why we
should take jurisdiction of this claim. The aid of the court in
settlement of a partnership concern might be needed where

WASHINGTON,
March,
1834.

Hunt
vs.
Gookin & Fay.

one of the partners is dead, for the purpose of substantiating a claim against the estate of the person deceased, for the purpose of selling the property, converting it into cash, the appointment of a receiver, or for other reasons, where the powers of the commissioners appointed to receive and examine the claims of creditors would be inadequate. But where a claim growing out of a partnership is ascertained, and the amount found due, the amount must be placed on the list of claims against the estate in the probate office. This might be done by permitting the survivor, after the claim was here established, to prove the amount of the claim before the commissioners, or in the suit pending on the appeal, and by enjoining the administrators from contesting a claim thus adjusted. It is sufficient to say that there is nothing here which calls on us to exercise our chancery powers on this subject. Having this view of the subject, we think that this is a case where the defendant cannot be required to make any further answer, and therefore overrule the decision of the master on the exceptions taken to the defendant's answer. The twentieth exception is not precisely of the same nature with the other exceptions, as it is founded on the insufficiency of the answer to the charges in relation to the obtaining the contract. The answer to this part of the bill is sufficient. It states that the contract was *mutually* entered into, both parties being desirous to have the claims between them amicably adjusted; and the particulars of what was said at the time, or of the conversation there had, are not material; and though they are stated in the bill, the orator has not framed any interrogatory for the purpose of having these particulars stated in the answer. It is therefore well enough as to the point referred to in this exception.